**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANTONIO DORTCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21 CV 1160 MTS |
| | ) | |
| UNKNOWN LEWIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Former inmate Antonio Dortch brings this action under 42 U.S.C. § 1983 for alleged violations of his civil rights. The matter is now before the Court upon motion for leave to proceed *in forma pauperis*, or without prepayment of the required filing fees and costs. Doc. [2]. Plaintiff was an incarcerated state prisoner when he filed the complaint in this matter on September 24, 2021.  However, on October 22, 2021, the Court received a change of address notice from plaintiff indicating that he had been released from jail.  Because plaintiff was released from confinement shortly after filing the instant action, the Court will grant his request to proceed in forma pauperis and will not assess an initial partial filing fee at this time. *See* 28 U.S.C. § 1915(a)(1).  Furthermore, after reviewing the complaint, the Court will dismiss this matter for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

### *In Forma Pauperis* Status and Payment of Filing Fee

Under 28 U.S.C. § 1915(b)(1), when a prisoner brings a civil action *in forma pauperis*, the prisoner must pay the full amount of the filing fee, usually in the form of an initial partial payment and then installment payments over time.  However, a non-prisoner plaintiff can litigate without payment of any fees if he qualifies under the general *in forma pauperis* provision of 28 U.S.C. § 1915(a)(1).

"Federal circuit authority is split on the question of whether the PLRA [Prison Litigation Reform Act] prison litigation provisions of § 1915 continue to govern if and after the prisoner is released *pendente lite* (that is, during the litigation).  The Fifth, Seventh and District of Columbia Circuits have held that the full payment requirement is triggered upon the filing of the (as applicable) complaint or notice of appeal. … The Second, Fourth, Sixth and Tenth Circuits have concluded to the contrary, that the requirements of the PLRA do not continue to apply after the plaintiff is released."  *Putzer v. Attal*, 2013 WL 4519351, at *1 (D. Nev. Aug. 23, 2013) (internal citations omitted).

The Eighth Circuit has not ruled on this issue.  However, in this case, plaintiff was released shortly after filing this case and before the Court had ruled his motion for *in forma pauperis* status and ordered an initial partial payment.  Therefore, the Court will consider plaintiff as he currently stands at the time of the review of his motion – as a non-prisoner plaintiff under 28 U.S.C. § 1915(a)(1).  Based on the financial information submitted, the Court finds that plaintiff does not have sufficient funds to pay the filing fee and will grant his motion.

### The Complaint

Plaintiff, a former inmate at St. Louis County Detention Center, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights. He names the following individuals as defendants in this action: Unknown Burris (Director of Justice Services); Sergeant Lewis; Charles McKnight; John Doe Correctional Officer; and Lieutenant Unknown Roland. Plaintiff sues defendant Unknown Burris in both his individual and official capacities. He sues the remaining defendants in their official capacities only.

Plaintiff asserts that when he was booked into St. Louis County Detention Center on August 5, 2021, he was told by an unnamed officer to bend over and spread his buttocks so that he could be searched. Doc. [1] at 3. Plaintiff states that on September 2, 2021, he told Director Burris

that searching pretrial detainees, like himself, was wrong. *Id.* Plaintiff states that defendant Burris did not answer plaintiff's statement and walked away. *Id.*

Plaintiff alleges that on September 2, 2021, he was told to move out of his bunk and sleep on the floor of a cell. *Id.* Plaintiff does not indicate who told him to sleep on the floor of the cell, and he does not state whether inmates were made to sleep on the floor because of overcrowding in the Detention Center. He also does not state how long he was asked to sleep on the floor.

Plaintiff claims, however, that when he refused to sleep on the floor, he was placed in disciplinary segregation for one day by defendant Unknown Lewis. *Id.* Plaintiff does not state if the conditions in segregation were different than the conditions in general population. He alleges that after he was released back to general population, he slept on the floor in several different cells throughout St. Louis County Detention Center. Plaintiff complains that his back has been hurting, and he complains that the lights in the cells in the Detention Center are on approximately twenty-four hours per day. *Id.* at 3-5. He also complains that he suffers from lack of sleep, and that the nurses in the Detention Center will only prescribe Ibuprofen and Tylenol for his aches and pains. *Id.*

On September 5, 2021, plaintiff was purportedly told by an unnamed officer to strip and bend at the waist and "spread his buttocks and cough." Plaintiff alleges that this search was illegal. Plaintiff does not provide facts detailing why he was searched on September 5, 2021.

Plaintiff asserts that he gave a grievance to defendant Unknown Roland on September 6, 2021. However, he never heard back relative to his grievance. *Id.* at 5. Plaintiff asserts that his due process rights must have been violated regarding the grievance process as a result.

Plaintiff states that on September 9, 2021, defendant McKnight told him that the strip searches he filed grievances for were not illegal. *Id.*

Plaintiff seeks monetary damages in this action.

- 3 -

**Discussion**

Plaintiff's allegations regarding illegal strip searches of him by defendants at the St. Louis County Detention Center fail to state a claim for relief as alleged. Additionally, plaintiff's allegations relating to his grievances do not rise to the level of a constitutional violation. Plaintiff's conditions of confinement claims also fail to state a claim for relief.

**A.  Official Capacity Claims Against Defendants**

Plaintiff brings official capacity claims against all of the named defendants in this action. Plaintiff's official capacity claims against defendants are subject to dismissal. A suit brought against a municipal official in his or her official capacity pursuant to § 1983 is not a suit against the official, but rather a suit against the official's employer. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  In other words, the real party in interest in an official capacity suit is not the named official, but the governmental entity.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  *See also Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). Accordingly, a plaintiff suing a public employee in his or her official capacity "sues only the public employer and therefore must establish the municipality's liability for the alleged conduct." *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016).

Plaintiff alleges defendants are employees of the St. Louis County Detention Center.  A jail/detention center is not a suable entity under § 1983. *See Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003); *Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992); and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001).

Even if St. Louis County was substituted as the employer, the claim still fails. To state a claim against St. Louis County, plaintiff must allege that a policy or custom is responsible for violating his constitutional rights. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978).

"Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible . . . for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390.

Alternatively, a plaintiff can establish a claim of liability based on an unconstitutional "custom." To do so, the plaintiff must prove:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). Finally, a plaintiff can show municipal liability by establishing a deliberate indifference by failing to train or supervise.

To do so, the plaintiff must demonstrate a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff's complaint does not provide any factual allegations to support a municipal liability claim against St. Louis County. A policy is a "deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin*, 829 F.3d at 700. Plaintiff points to no facts tending to show that a St. Louis County official made a deliberate choice to institute an official policy that is either unconstitutional on its face or in its implementation.

Plaintiff also has not provided any factual allegations to support the contention that a St. Louis County official violated his constitutional rights due to an unofficial custom. To demonstrate that a municipality has an unofficial custom, plaintiff must show a widespread pattern of misconduct, that policymaking officials were deliberately indifferent to or tacitly authorized the misconduct, and that the custom was the driving force behind the constitutional violation. *Johnson*, 725 F.3d at 828. Plaintiff does not make any specific allegations of widespread misconduct. In other words, he has not alleged that searches were occurring on others in the Detention Center who were also pretrial detainees. To the contrary, plaintiff alleges that his treatment was personal. He alleges that he was searched twice, and that he told Director Burris that the searches performed on him, as a pretrial detainee, were illegal.[1]

To establish municipal liability, plaintiff must allege facts showing that the county has an unconstitutional policy, unofficial custom, or has failed to train or supervise its employees. *See Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018).  Plaintiff has not alleged facts regarding any

---

[1]Although plaintiff has also alleged conditions of confinement claims and claims relating to a failure to respond to his grievances, these claims are also personal to plaintiff and do not reflect policy or custom claims.

unconstitutional policy, unofficial custom, or failure to train, and has therefore failed to establish the county's liability. Therefore, plaintiff's claims against defendants are subject to dismissal.

### A. Individual Capacity Claim Against Defendant Burris

Plaintiff sues defendant Burris in his individual capacity. All other defendants are sued in their official capacities only. Plaintiff has made only one claim that involves defendant Burris in this action relative to his individual capacity. He asserts that he told defendant Burris that searching pretrial detainees like himself was wrong.

A "search" within the meaning of the Fourth Amendment occurs when "'the government violates a subjective expectation of privacy that society recognizes as reasonable.'" *Arnzen v. Palmer*, 713 F.3d 369, 372 (8th Cir. 2013) (quoting *Kyllo v. United States*, 533 U.S. 27, 31–33 (2001)). However, jail administrators have wide latitude to adopt search procedures at intake for purposes of safety and security. The Supreme Court has recognized the importance of making sure contraband is not injected into a jail's population. "Correctional officials have a legitimate interest, indeed a responsibility, to ensure that jails are not made less secure by reason of what new detainees may carry in on their bodies." *Florence v. Bd. of Chosen Freeholders of County of Burlington*, 566 U.S. 318, 322 (2012) (jail administrators may require strip searches at intake, even of detainees arrested for minor offenses).[2] In *Florence*, the Court noted the Constitution would allow jailers to strip search – without individualized suspicion – all detainees entering the jail. *Id*. at 330 ("The question here is whether undoubted security imperatives involved in jail supervision override the assertion that some detainees must be exempt from the more invasive search

---

[2]In *Florence*, the Supreme Court noted that correctional officers must be allowed to conduct an effective search of detainees— even those held for minor offenses—before they are admitted to a general jail population, and that "this will require at least some detainees to lift their genitals or cough in a squatting position." *Florence*, 566 U.S. at 3; *Id*. at 1520.

procedures at issue absent reasonable suspicion of a concealed weapon or other contraband. The Court has held that deference must be given to the officials in charge of the jail unless there is 'substantial evidence' demonstrating their response to the situation is exaggerated")

Here, plaintiff identifies one strip search that occurred at intake for the St. Louis County Detention Center, prior to his release into general population. Plaintiff does not indicate who allegedly told him to "bend over and spread his buttocks." Doc. [1] at 3. He has certainly not indicated that the person who asked for the search was defendant Burris. He also identifies a second strip search; however, he does not indicate why the second strip search was asked for, or by whom. Again, plaintiff has certainly not stated that defendant Burris asked for the search of plaintiff. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (finding that liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights); *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (noting that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability under § 1983).

Given what the Supreme Court has said about the strong institutional interests in maintaining security and the reasonableness of visual body-cavity inspections when detainees enter a facility, plaintiff's allegations of a body-cavity search by itself does not state a claim for the violation of a clearly established right. Furthermore, this Court is cognizant that plaintiff has not alleged that any defendant touched plaintiff in an untoward manner, and the scope of the search was visual in nature. *See Brigham City v. Stuart*, 547 U.S. 398, 404 (2006) (citing *Whren v United State*, 517 U.S. 806, 813 (1996)) (searches conducted in an abusive fashion are unreasonable). Furthermore, plaintiff has not connected defendant Burris to the searches identified by plaintiff. Thus, the Court cannot say that plaintiff's rights were violated at the time he was asked to submit to the visual searches in the Detention Center.

Although plaintiff has not identified a specific defendant who allegedly violated his rights with respect to his remaining claims, the Court will still address plaintiff's conditions of confinement claims and failure to respond to his grievance claims as if he made individual capacity claims against the remaining defendants. *See Madewell*, 909 F.2d at 1208 (8th Cir. 1990).

Plaintiff's allegations that defendants failed to adequately respond to his grievances fails to state a constitutional claim. An inmate has a liberty interest in the nature of his confinement, but not an interest in the procedures by which the state believes it can best determine how he should be confined. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996). As such, "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). *See also Jenner v. Nikolas*, 828 F.3d 713, 716-17 (8th Cir. 2016) (explaining that "[t]he existence of a state-mandated procedural requirement does not, in and of itself, create a constitutionally protected liberty interest"). To that end, a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531, 1993 WL 349355, at *1 (8th Cir. 1993) (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights"). As such, plaintiff's contention that defendants failed to follow the grievance procedures at the St. Louis County Detention Center fails to state a claim for relief.

Plaintiff contends that he had to sleep on the floor of a cell due to overcrowding at the Detention Center for an unspecified time, and that in one, or some of the cells he was in, the light was on approximately twenty-four hours per day. Doc. [1] at 3. This claim also fails to state a

- 9 -

constitutional violation. "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Brown v. Nix*, 33 F.3d 951, 955 (8th Cir. 1994). The Supreme Court has determined that the government may detain defendants before trial and "subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979). To that end, there are two ways to determine whether conditions rise to the level of punishment. *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 907 (8th Cir. 2020). First, a plaintiff can show that his or her conditions of confinement were intentionally punitive. *Id*. Second, in lieu of an "expressly demonstrated intent to punish," a plaintiff can "also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id*. If conditions are arbitrary or excessive, it can be inferred that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon pretrial detainees. *Id*. "However, not every disability imposed during pretrial detention amounts to punishment in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

In determining whether pretrial detention is unconstitutionally punitive, the United States Court of Appeals for the Eighth Circuit has applied the deliberate indifference standard. *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003). *See also Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) ("To succeed on a claim under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee…must show the defendant official was deliberately indifferent to his rights"). In particular, the Eighth Circuit has explained that this standard is applicable when "the governmental duty to protect at issue…is not based on a pretrial detainee's right to be free from punishment but is grounded in principles of safety and well-being." *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). To that end, the Eighth Circuit has held "that deliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial

detainees with adequate food, clothing, shelter, medical care, and reasonable safety." *Id*. at 345.

The length of time an inmate endures an allegedly unconstitutional condition of confinement is a

factor in determining whether there has been a constitutional violation.

Plaintiff's claim relating to overcrowding seems to assume that inmates are not allowed to

sleep on a cell floor. Triple-celling is not in and of itself unconstitutional. *McCree v. Sherrod*, 408

Fed.Appx 990 (7th Cir. 2011); *Hubbard v. Taylor*, 538 F.3d 229 (3d Cir.2008); *Strickler v. Waters,*

989 F.2d 1375 (4th Cir.1993). Rather, triple-celling is only unconstitutional if it leads to

"deprivations of essential food, medical care, or sanitation." *Cody v. Hillard*, 820 F.2d 912, 914

(8th Cir. 1987). Plaintiff must show that triple-celling deprives him "of the minimal civilized

measures of life's necessities is unconstitutional." *Morris v. Zefferi,* 601 F.3d 805, 809 (8th Cir.

2010)*.*

Plaintiff does not allege any facts to demonstrate that sharing a cell rises to the level of a

violation of his constitutional rights. For example, he makes no allegation that he was forced to

sleep under a bunk or that he was forced to sleep near the toilet. He also does not allege that sharing

a cell affected his health or his hygiene. Plaintiff's conclusory complaints regarding sleeping on

the floor for an unspecified time and sleeping in a cell with the light on for an unspecified time

here clearly do not meet the punitive standard. Thus, these claims are subject to dismissal.

Plaintiff also complains that when he talked back and refused to sleep on the floor, he was

placed in disciplinary segregation by defendant Unknown Lewis. Doc. [1] at 3. To prevail on a

Fourteenth Amendment due process claim, a plaintiff must first demonstrate that he or she was

deprived of life, liberty, or property by government action. *Phillips v. Norris*, 320 F.3d 844, 846

(8th Cir. 2003). *See also Singleton v. Cecil*, 155 F.3d 983, 987 (8th Cir. 1998) (explaining that to

claim a due process violation, plaintiff has to be deprived of either life, liberty, or property,

otherwise "it does not matter whether one has received due process or not"). As life or property is

not at issue in this case, plaintiff must identify a liberty interest to sustain a due process claim. *See Phillips*, 320 F.3d at 847.

The United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). As such, to assert a due process violation based on a liberty interest of avoiding administrative segregation, "an inmate must show that the segregation created an atypical and significant hardship on him in relation to the ordinary incidents of prison life to demonstrate that his liberty interest was curtailed." *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002).

The Eighth Circuit has stated that an assignment to disciplinary or administrative segregation is not, in and of itself, an atypical and significant hardship. *See Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) (stating that Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*"); *Kennedy v. Blankenship*, 100 F.3d 640, 642 (8th Cir. 1996) (stating that plaintiff's "demotion from administrative segregation to punitive isolation is not the sort of deprivation that qualifies as atypical and significant"); and *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996) (stating that plaintiff "has no liberty interest in avoiding administrative segregation unless the conditions of his confinement present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest"). This is so even if the demotion to segregation is without cause. *Phillips*, 320 F.3d at 847.

Plaintiff does not state if the conditions in segregation were different than in general population. However, he does indicate that his stay in disciplinary (or administrative) segregation was for a mere day. The Eighth Circuit has found in other cases that as much as nine months in disciplinary segregation is not an atypical or significant hardship. *See Kennedy,* 100 F.3d at 641-

- 12 -

42 (stating that plaintiff's thirty days in punitive isolation was not atypical and significant); *Orr v. Larkins*, 610 F.3d 1032, 1033-34 (8th Cir. 2010) (stating that nine months in administrative segregation did not constitute an atypical and significant hardship). Accordingly, this Court cannot find that plaintiff's placement in disciplinary segregation for one day for failure to follow an order was a due process violation.

Last, plaintiff complains that his back hurt during his incarceration. He also complains that he suffered from lack of sleep during his incarceration, and the nurses in the Justice Center would only prescribe Ibuprofen and Tylenol for his aches and pains. Doc. [1] at 3-5. Plaintiff, however, fails to assert that he had a serious medical condition that he sought treatment for, from medical personnel who denied him treatment.

"A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). To establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019).  Because plaintiff has not established that his minor back pains and headaches are serious medical needs or that he sought treatment from one of the named defendants and was denied treatment, he cannot state a claim for deliberate indifference to his serious medical needs.

Based on the aforementioned, plaintiff's complaint fails to state a claim upon which relief may be granted. This matter will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis, Doc. [2], is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $1.00 within thirty (30) days of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel, Doc. [4], is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 7th day of March, 2022.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE